## CLARENCE DAWSON v. STATE.

No. A-5990.   Opinion Filed March 13, 1926.
(244 Pac. 57.)

J. B. Ogden, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called the defendant, was charged by information in the district court of Carter county with the crime of murder. He was convicted of manslaughter in the first degree and sentenced to serve a term of 10 years in the state penitentiary.

The defendant has filed a brief which does not conform to the rules of this court. No authority is cited in support of the contentions made. Neither the instructions nor the part thereof complained of are set out. The record discloses that the defendant and the deceased are negroes; that on the 30th day of May, 1925, defendant went into a shoe-shining parlor in the city of Ardmore, conducted by deceased, where some colloquy or quarrel took place, and defendant, with a pistol, shot and killed deceased, who was unarmed. According to the evidence of eyewitnesses who appear disinterested, not a word was said by either deceased or defendant before the fatal shot was fired, and deceased was not even looking at defendant at the time. The testimony of defendant tended to raise a question of self-defense and injected some elements of the so-called unwritten law. His testimony on this point is:

"Q. Now, then, on or about the 30th day of May, 1925, this last May, tell the jury there what you did that day. A. What I did that day?

"Q. The day Hilton was killed. A. Well, I was— that evening I was figuring on going out in the country to my cousin's, out here northwest of Springer, and

had been down to Wade Shelton to get him to carry me out there, and he told me to meet him up in town; and I met this fellow Teta Ray, and was talking to him, and 'Hilt' came to the door, and called me, and I said, 'I will see you in a minute, as soon as I see what this fellow wants'; and I followed him on back in the back.

"Q. Was that Hilton English, the deceased, that called you?  A. Yes, sir.

"Q. At that time, did you have your pistol on you? A. Yes, sir; I had it.

"Q. Now, then, go ahead and tell the jury.  A. Well, I was figuring on going out in the country at my cousin's, and Wade told me to come on up town; that he would be at the drug store there; and I met up with Teta Ray, and he told me to come in, and I went on back in there with him, and he commenced cussing me before I got back there, and he cussed me and wheeled about to go into his pocket.

"Q. When he wheeled and was cursing you, tell the jury what you did?  A. When he wheeled I shot him, because I thought he was going to kill me.

"Q. Then what did you do?  A. I walked out. * * *

"Q. You followed Hilton English on back of that shine stand; he was in his shirt sleeves?  A. Yes, sir; he had on a vest, just like I have on now."

"Q. You could see his hip pockets, couldn't you? You were behind him?  A. Yes, sir.

"Q. You knew he didn't have any gun in those hip pockets?  A. No, sir.

"Q. You didn't know he didn't have any gun in that hip pocket?  A. No, sir.

"Q. As a matter of fact, you know he didn't reach for his hip pocket in your presence?  A. No, sir; I don't; he reached for his pocket.

"Q. You never did see a gun there? A. No, sir; I didn't see what he was reaching for at all. * * *"

The contention is made that the court erred in permitting the state to introduce testimony showing a separation between the defendant and his wife in 1922 and 1923; and evidence tending to show the relation of the defendant with another woman during that time. This was in a sense in rebuttal of the evidence of the defendant in raising the so-called unwritten law. All this evidence, however, was later stricken from the consideration of the jury. It is also urged that at one time the court, in the presence of the jury, threatened to fine counsel for defendant. In the cross-examination of a witness for the state and referring to the place of business of the deceased, defendant's counsel asked if there was a gambling hall in the rear of the shine parlor. The state objected and the court sustained the objection. Counsel for defendant said:

"I think that is proper. I am going to ask him—

"By the Court: Wait a minute, do not do it any more. If you do, I will impose a fine. That was objected to and the objection sustained."

This was an improper statement by the court in the presence of the jury, but from the record we perceive that the trial court might readily have viewed the statement of counsel as ignoring his ruling sustaining the objection. The error is not such as to justify a reversal.

Upon an examination of the entire record, and considering the testimony of the defendant, we think the jury could not have done other than find the defendant guilty of manslaughter in the first degree. The defendant is not injured by the errors complained of.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.